

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

RUBENS MESA  CASE NO. CV06-0435
and JULIETA TARAZONA

VERSUS  JUDGE RICHARD T. HAIK

LAFAYETTE CITY PARISH
CONSOLIDATED GOVERNMENT
ET AL  MAGISTRATE JUDGE METHVIN

*************************************************************

# RULING

This action arises out of the arrests of Plaintiffs Julieta Tarazona and Rubens Mesa, by Lafayette Parish Police officers, during the evening/early morning hours of April 8-9, 2005. On that date, Defendant, Sergeant Dwayne Prejean, conducted the arrest of Plaintiff Julieta Tarazona for Remaining After Forbidden and Disturbing the Peace by Public Intoxication. At about the same time, other Lafayette Police officers conducted the arrest of Plaintiff Rubens Mesa for **Resisting an Officer, Battery of an Officer, Obstruction of Public Passage, and Disturbing the Peace by Public Intoxication.** Plaintiffs are a married couple. They filed suit on March 17, 2006. Specifically against Dwayne Prejean, Plaintiff Julieta Tarazona asserts claims of First, Fourth, and Fourteenth Amendment

violations, as well as other state claims arising out of this incident. Plaintiff Mesa has asserted claims against Sergeant Prejean for violations of the Fourth Amendment and other state claims arising out of the incident.

## THE MOTION

Defendant Dwayne Prejean has filed a Motion for Summary Judgment [Doc. 116] seeking dismissal of all claims brought against him on the grounds that he is entitled to immunity from suit.

## QUALIFIED IMMUNITY

Dwayne Prejean raises the defense of qualified immunity claiming that, on the evening in question, he was exercising his discretion as a police officer. As discussed below, the Court finds that Sergeant Prejean, at all times pertinent to this Motion, was exercising his discretion as a police officer.

Once immunity has been raised, the Plaintiffs carry the burden of overcoming the defense. Before any court can adjudicate the merits of Plaintiffs' claims, they must overcome the bar of qualified immunity. *Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir.2005). The Fifth Circuit Court of Appeal has advised that, "Once raised, a plaintiff has the burden to rebut the qualified immunity defense 'by establishing that the official's allegedly wrongful conduct

violated clearly established law. [The Fifth Circuit does] not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.'" *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375 (5th Cir. 2005), citing *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir.1997). Qualified immunity protects officials in the course of performance of their discretionary duties unless their conduct violates a "clearly established [federal] statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts must first determine whether a plaintiff has alleged the violation of a clearly established constitutional right. See *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). If the right has been clearly established, we examine the objective legal reasonableness of the official's conduct under the circumstances, "in light of clearly established law and the information the...officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

## SUMMARY JUDGMENT

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then they are not entitled to summary judgment and no defense to the motion is required. *Id.* To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir.1999).

The non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.2002); see also *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

## FACTS NOT IN DISPUTE

On the date in question, Sergeant Prejean was a police officer with the Lafayette Police Department. He was working a downtown detail on Jefferson Street. Jefferson Street, where many bars are located, is a popular night spot each

weekend in downtown Lafayette. According to former Chief of Police Randy Hundley, the area has one of the highest incident rates in the city. [Deposition of Randy Hundley, p 189-192]. At some point after beginning his shift, Sergeant Prejean called on several establishments along Jefferson Street to address violations of both a state statute and city ordinance concerning obstructions of public sidewalks, one of those being Guama's Restaurant and Bar ("Guama's"), which is owned and operated by the Plaintiffs.

Upon entering Guama's, Sergeant Prejean approached an employee and asked for the manager. Sergeant Prejean was advised that the manager was not there. He gave the bartender his number and requested that the manager or owner call him.

According to Sergeant Prejean, he left Guama's and crossed Jefferson Street to discuss another obstruction on the sidewalk at Club 307. [Deposition of Dwayne Prejean, p 54]. On the sidewalk outside of that establishment, Sergeant Prejean had occasion to arrest Tyler Guilbeau for Disturbing the Peace by Intoxication. Coincidentally, Mr. Guilbeau had been a patron of Guama's Restaurant earlier in the evening. Sergeant Prejean handcuffed Guilbeau, walked him to his police unit, obtained his driver's license, placed him in the back seat of the police unit, and closed the door. The police unit was located at or near the corner of Jefferson and Vine; Guama's is the third establishment from that corner.

Sergeant Prejean, standing alongside of his police unit, began to write a summons which he intended on issuing to Guilbeau.

**Rubens Mesa came to be on the scene by walking outside of Guama's. He observed Officer Prejean walking** with Tyler Guilbeau, his arrestee, to a police vehicle. Mesa observed Prejean filling out papers, walked over to Sergeant Prejean, and attempted to begin a conversation. [Deposition of Rubens Mesa, p 67-69].

According to Tarazona, she approached Sergeant Prejean at his police unit, advised him she was the owner of Guama's, inquired about the tables and chairs and asked why one of her customers was being arrested. [Deposition of Tarazona, pp 78, 80-81, 219-220]. She testified that Guilbeau was in the car at this point and that Sergeant Prejean was writing something. [Deposition of Tarazona at p 78-79, 219-220]. Tarazona further testified that, in response to her inquiries, Officer Prejean did not respond with anything other than, "Stay away," "Back off," "Get off the street," and "Something like it's none of your business." [Deposition of Tarazona at p 228]. Despite these warnings, Tarazona admitted that she did not leave immediately. [Deposition of Tarazona p 224].

Both Sergeant Prejean and Tarazona testified that Sergeant Prejean advised her at least twice to get out of the street and move on. [Deposition of Prejean, p 60; Deposition of Tarazona p 87]. When asked why she did not move on when

instructed to do so by Sergeant Prejean, she admitted that her reason for not doing so was because she "didn't think he understood who I was and why I was there." **[Deposition of Tarazona, p 222]**.

At some point before arresting Julieta Tarazona, Sergeant Prejean called for backup. [Deposition of Prejean, p 72, 75-6, ]. Officers David Azemar and Michael Boutte reported to the scene as requested. [Deposition of Azemar p 65]. Officers Trouard and Oakes also reported to the scene; however, from the depositions provided to the Court by the Defendants, no information is provided regarding how these two officers came to the scene.

Tarazona eventually started to walk away from Prejean, but **she stopped** and turned around to make a verbal statement to Prejean. Tarazona testified, "I turned around–when I got in the sidewalk, close to Rubens, I turned around and I told him, if he didn't have that badge, he wouldn't be treating us like that." **[Deposition of Julieta Tarazona, p 227]**. Julieta Tarazona was then arrested by Sergeant Prejean, and later charged with both Remaining After Forbidden and Disturbing the Peace by Public Intoxication. Shortly after Sergeant Prejean initiated the arrest, Tarazona knelt on the sidewalk. **[Deposition of Tarazona, p 234]**. She testified she felt his hand on her shoulder was his way of communicating to her that she should kneel down. She also testified that the pressure from the hand did not hurt at all. **[Deposition of Tarazona, p235-236]**. Regarding the force with

which Sergeant Prejean arrested her, Tarazona testified that Sergeant Prejean did not overcome her with force and cause her to be on her knees. [Deposition of Tarazona p 234]. She sustained no physical injuries. [Deposition of Tarazona p 20, 118, 234; Deposition of Mesa p 176].

Immediately following the arrest of Tarazona, her husband Rubens Mesa was arrested by other Lafayette Police Department officers; **specifically, by Officers Boutte, Azemar, Trouard, and Oakes.** [Deposition of Prejean, p 141-4, 145-7; Deposition of Officer David Azemar, p 69; Deposition of Officer Michael Boutte p 52-3, 70-1]. A scuffle took place between the officers and Mr. Mesa. [Deposition of Officer Michael Boutte, p 52, 70; Deposition of Sergeant Dwayne Prejean p 141]. **Named defendants include Prejean, Boutte, Azemar, Trouard, and Oakes.**

Sergeant Prejean did not arrest Mesa, nor did he direct anyone to do anything to, including hit or strike, Mesa. [Deposition of Tarazona, 233-234; Deposition of Mesa 171-172, 176]. Mr. Mesa was arrested and charged with Remaining After Forbidden, Disturbing the Peace by Public Intoxication, and other violations.

A criminal trial was held in January 2006 resulting in a dismissal of the charges against Plaintiffs. Thereafter, Plaintiffs filed suit against Sergeant Prejean and others alleging various constitutional violations, as well as state law claims.

## REASONS FOR JUDGMENT

### Claims of Plaintiff Julieta Tarazona

Julieta Tarazona asserts an action under 42 U.S.C. section 1983 against Sergeant Dwayne Prejean, for violation of her First, Fourth, and Fourteenth Amendment rights. She alleges that he arrested her without probable cause, used excessive force during the arrest, and violated her Freedom of Speech. She also alleges various state law claims. As to all claims, Sergeant Prejean seeks summary judgment finding that he is immune.

Qualified immunity protects officials in the course of performance of their discretionary duties unless their conduct violates a "clearly established [federal] statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To resolve this question, the Court must conduct a two-part analysis. We first determine whether Julieta Tarazona has alleged the violation of a clearly established constitutional right. See *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). If we find a right to be clearly established, we examine the objective legal reasonableness of Sergeant Prejean's conduct under the circumstances, "in light of clearly established law and the information [the officer] possessed." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Tarazona alleges that she was arrested without probable cause and,

therefore, Sergeant Prejean violated her Fourth and Fourteenth Amendment rights to be free from unreasonable seizure. The right to be free from unreasonable seizure is a clearly established constitutional right and, therefore, the basis of her allegations is sufficient.

As to whether it was reasonable, in light of the law and circumstances, to arrest Julieta Tarazona, the undisputed facts are as follows:

As **Tarazona** testified, she refused more than once to move on as ordered. **[Deposition of Tarazona p 224, 87]**. Sergeant Prejean advised her at least twice to get out of the street and move on. **[Deposition of Prejean, p 60; Deposition of Tarazona p 87]**.

The law concerning probable cause as to Remaining After Forbidden is discussed by the Louisiana Third Circuit Court of Appeal, in *Murray v. Town of Mansura*, 940 So.2d 832, 841-842. There, the Court found that probable cause to arrest for Remaining After Forbidden existed, where, in March 1999, the Chief of Police of the Town of Mansura:

> "...told [the defendants] to leave City Hall and return the next day to discuss their complaints. [The officer] further testified that he told [defendants] this more than one time, but the men did not leave. His testimony on this issue was not refuted by either [defendant]."

Under the circumstances observed by Sergeant Prejean, in light of the evidence, and under the applicable law, a reasonable officer could have concluded that he

had probable cause to arrest Julieta Tarazona. Even if Sergeant Prejean did not actually have probable cause to arrest Tarazona, the reasonableness of his conduct under the circumstances for the arrest entitles him to qualified immunity on this claim, for, as explained by the Fifth Circuit in *Anderson v Creighton,* 483 U.S. 635, 641 (1987):

> "...it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials like other officials who act in ways they reasonably believe to be lawful-should not be held personally liable."

Thus, as to her claim that Sergeant Prejean violated the Fourth and Fourteenth Amendments by arresting her without probable cause, thus, subjecting her to unreasonable seizure, Prejean is entitled to immunity from suit.

The reasonableness of the arrest, in that a reasonable officer could have concluded the arrest was warranted for Remaining After Forbidden, obviates the need to determine whether probable cause existed as to public intoxication. Therefore, Prejean is immune from Plaintiff's claim regarding public intoxication.

Tarazona also alleges that Sergeant Prejean used excessive force against her by forcing her to kneel during her arrest, in violation of the Fourth Amendment. The right to be free from excessive force during an arrest is a clearly established constitutional right:

> "All claims that law enforcement officers have used excessive force-deadly

or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]"

*Graham v. Connor*, 490 U.S. 386, 395 (1989). Thus, the Plaintiff's allegation meets the first requirement of the two-part inquiry.

As to this claim, the issue is whether a reasonable police officer in April 2005 would have known that having an arrestee kneel on the sidewalk falls within the bounds of the Fourth Amendment's prohibition of the use of excessive force "in the light of pre-existing law." *Anderson, supra,* 483 U.S., at 640.

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. See *Terry v. Ohio*, 392 U.S. 1, 20-22, (1968). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Johnson v. Glick*, 481 F.2d 1028,1033. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham v. Connor* 490 U.S. 386, 396-7 (1989).

Tarazona sustained no physical injuries from the arrest. [Deposition of Tarazona, p 117, 234]. During her arrest, Sergeant Prejean used his hands to put pressure on the back of Tarazona's neck; Tarazona took this pressure to mean that

she should kneel, which she did. [Deposition of Tarazona, p 233-6]. In light of the fact that Tarazona admits that her kneeling on the sidewalk was a reaction she had to Sergeant Prejean's hand on her shoulder, the allegation that Sergeant Prejean forced her to kneel carries little weight. [Deposition of Tarazona, p 235]. As previously noted, Sergeant Prejean testified he did not force her to her knees. However, if in fact she knelt at his non-verbal command–his hand on her shoulder–she testified that she was not physically in pain due to her kneeling. [Deposition of Tarazona, p235-236].

Consequently, the Court concludes that the force used was reasonable. Having the suspect kneel on the ground was one way in which the arrest could be safely conducted. Thus, a reasonable officer would have been well within the bounds of the Fourth Amendment's prohibition against the use of excessive force. As the Plaintiff has failed to meet her burden of showing that the force used was unreasonable, Sergeant Prejean is entitled to immunity as to this claim.

Tarazona further alleges a violation of her First Amendment right to Freedom of Speech. The right to Freedom of Speech is a clearly established constitutional right, so Plaintiff meets the first requirement of *Siegert*. However, for the reasons stated above, the Court finds no merit in Plaintiff's First Amendment claim. Because Sergeant Prejean had independent grounds on which to make the arrest, Plaintiff has failed to show that she was arrested for exercising

her First Amendment right of freedom of speech. As to Plaintiff's First Amendment claim, **Prejean is immune.**

**Plaintiff has not carried her burden as imposed by** *Estate of Davis* **and** *Anderson.* **Consequently, Sergeant Prejean is immune from the Constitutional claims asserted by Julieta Tarazona.**

As to Tarazona's state claims against Sergeant Prejean, Sergeant Prejean is also entitled to immunity. Her claims of false charges, malicious prosecution, battery, false imprisonment, defamation must be dismissed, as these claims all arise out of the arrest which the Court has deemed to be lawful and reasonable under the circumstances.

The Court hereby GRANTS the Motion for Summary Judgment as to Plaintiff Tarazona and dismisses all claims asserted by her against Sergeant Dwayne Prejean with prejudice.

### Claims of Plaintiff Rubens Mesa

Rubens Mesa has asserted various claims **against Dwayne Prejean, including liability** in his supervisory role over Officers Boutte and Azemar, two of the officers who arrested Mesa.

### SUPERVISORY LIABILITY

Section 1983 does not create vicarious or *respondeat superior* liability.

*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir.1987). To assess an individual supervisor's liability under section 1983, the Fifth Circuit uses the same standard as that used in assessing a municipality's liability thereunder. *Doe v. Taylor ISD*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc). The standard is as the Fifth Circuit explained in *Hinshaw v. Doffer*, 785 F.2d 1260 (5th Cir. 1986):

> [T]he plaintiff must show that: (1) the [supervisor] failed to supervise or train the officer, (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference.

See also *Doe v. Taylor ISD*, supra, at 452-3. Thus, a plaintiff must show either the supervisor was personally involved in the constitutional violation or that there is a "sufficient causal connection" between the supervisor's conduct and the constitutional violation. *Thompkins*, 828 F.2d at 304; see also *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir.1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor.").

A supervisory official is held to a standard of "deliberate indifference," which requires proof that the supervisor "disregarded a known or obvious consequence of his action." *Southard, supra* 114 F.3d at 551 (internal quotation marks omitted). "Deliberate indifference" is a stringent standard of fault..." *Board*

*of the County Commissioners of Bryan County, Oklahoma, v. Brown*, 520 U.S. 397 (1997); see also, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (deliberate indifference is more than "more blameworthy than negligence", but less than "acts or omissions for the very purpose of causing harm or with knowledge that harm will result"). The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]." *Gonzalez v. Ysleta Independent School District*, 996 F.2d 745, 756 (5th Cir.1993), quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir.1992).

With these standards in mind, the Court reviews the following undisputed material facts:

Sergeant Prejean was the supervisor of Officers Boutte and Azemar, two of the various officers who arrested Mesa. [Deposition of Prejean, p 45]. Dwayne Prejean did not arrest, nor come into contact with, Mr. Mesa in any way. [Deposition of Julieta Tarazona, p 232-3; Deposition of Rubens Mesa, p 171-2]. The arrests of Julieta Tarazona and Rubens Mesa occurred in close physical and temporal proximity. Officer Prejean testified Mesa was about eight feet away. [Deposition of Sergeant Dwayne Prejean, p 143]. Sergeant Prejean had Julieta Tarazona in his immediate physical custody during the arrest of Rubens Mesa.

During Mesa's arrest, Sergeant Prejean undisputably was engaged in the

arrest of Julieta Tarazona, and had immediate physical custody over her. During this time, Tarazona testified that she was upset and crying. [Deposition of Tarazona, p 238-240]. Plaintiff brings forth no evidence as to Sergeant Prejean's focus during this time. Sergeant Prejean, however, has testified that he was unaware of what happened after Officers Azemar and Boutte initially arrested Mr. Mesa, because his attention was focused on his arrestee, Julieta Tarazona. [Deposition of Prejean p 97,100]. Prejean testified he did not witness any officer striking blows on Mr. Mesa. [Deposition of Prejean, p 142]. He further testified he didn't see anybody using sticks, or punches, or any excessive force. [Deposition of Prejean, p 144]. Plaintiff has not pointed to any evidence which suggests that Sergeant Prejean had full knowledge of the events occurring during Mesa's arrest.

The burden is on the Plaintiff to show that Sergeant Prejean deliberately disregarded Mesa's constitutional rights, but the evidence fails to do so. The mere fact that Sergeant Prejean was nearby while other officers arrested Mesa does not prove that Prejean had deliberate indifference toward Mesa. As to Mesa's claim that Sergeant Prejean is liable under 1983 for declining to intervene in the alleged beating, Prejean is entitled to immunity from suit. To the extent Mesa asserts state claims against Sergeant Prejean, Sergeant Prejean is also entitled to immunity, as these claims all arise out of the conduct of Sergeant Prejean, which the Court has

deemed to be lawful.

The Court hereby GRANTS the Motion for Summary Judgment and dismisses all of Plaintiff Mesa's claims against Sergeant Dwayne Prejean with prejudice.

## CONCLUSION

The results which the Court reaches today comport with the purpose of the doctrine of qualified immunity. For, **under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."** *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether, under the circumstances, the conduct of which the plaintiff complains violated clearly established law which a reasonable person would have known. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341(1986).

**For the reasons stated above, the Motion for Summary Judgment is granted and the claims of both Plaintiffs against Sergeant Dwayne Prejean are dismissed**

with prejudice.

THUS DONE AND SIGNED on the 29th day of August, 2007.

*[signature: Richard T. Haik]*

CHIEF JUDGE RICHARD T. HAIK, SR.

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA